Good morning. Good morning, Your Honors. My name is Paul Hemesath. I'm an assistant United States attorney from the Eastern District of California. I'd like to reserve three minutes for rebuttal, if I may. Keep track of your time. Proceed whenever you're ready. May it please the Court, Your Honor, we are here today to discuss whether there was custody in this case in the context of Miranda and this Court's decision in Craig's — in Craighead. The government argues— Before you go too far on Craighead, I'd like your take on how are we to meld, mesh, whatever you want to call it, Brobst and Craighead? Are there nine elements? Are there five? Are there four? How do they relate to one another? I'm sorry, Your Honor, what in Craighead? Brobst, B-R-O-B-S-T. It was an opinion written by Judge Randy Smith that also dealt with a similar in-home interrogation. And it came up with four factors, unlike Craighead's five factors. I gather since you don't know the case, you can't help me with my problem. Well, Your Honor, I was expecting you to say Kim factors, because that is what the lower court considered in addition— I was more of the mayor. Why not? So I suspect that the Brobst factors are similar to the Kim factors. At the outset, I would say that the Craighead head court noted that it was a non-exclusive list. It was a totality of the circumstances. And although the framework is set forth in Craighead, I think it's fair game to include any number of things. For instance, the other district courts and the other circuit courts that have considered this matter in an in-home custody setting have quite often taken note of the time of day, whether or not the officers have arrived at 4 AM, or in this case, whether they arrive at 10 AM in the morning. So I'd be happy— What was Judge Shub asked to do by the parties? Which case did the parties propose to Judge Shub? Initially, it was Craighead. And then additionally, I don't know if he was asked, but he certainly did consider the Kim factors. Well, we've gone over— we do a lot of factor stuff, and whether that's good or bad, I don't know. But essentially, you're right. It's the totality of the circumstances. We're just trying to talk about some of the circumstances, where they fit. But as long as— but essentially, he was using the Craighead factors, right? Yes. He discussed a great number of things. And as a totality, he did find custody. But where the government takes issue is the way he applied specifically some of those factors. Before you get there, I want to understand what the standard of review is here with respect to the judge's factual findings. What deference, if any, do we give to the district court's determinations? With regard to the specific factual findings, for instance, how many officers were there, I think the cases are clear. This court reviews that conclusion for clear error. So the fact that it was there for 45 minutes, the fact they were armed, the number of people, and so on. Unless there's a clear error, we are bound by that, right? OK. But beyond that, the conclusions, the legal conclusions, and the significance, and the logic in applying those individual facts is a de novo standard. And I think that the cases are fairly clear on that matter. So the government argues that the district court erred by misapplying the various Craighead factors. And I'll go through them in order. With regard to the first Craighead factor, the factor is the number of officers and whether the officers were armed. Now, the court made some clear factual findings. The court found that there were two officers, and the court found that they were armed, but their weapons were not displayed, and they were holstered, and they were not really a part of the story as weapons. Unlike the facts in Craighead, where there were eight armed officers in raid jackets that were there to conduct a search warrant. Let me just be sure, as we go through this analysis, it's a weighing that we're doing, right? Right. This is not a open and shut, you know, check the box and the way it is. So here we've got these government officers. They're armed. Big guys show up in the morning. There are two. They're not eight, but this is one guy here. Is it fair to say that a reasonable person under the totality of circumstances could consider that as being a factor that tilts in favor of Blanford? Not strongly, but it's a factor. Your Honor, in the context of Craighead, the question is not simply who was winning, which way of the battle, which tide it was turning with regard to who was more going to overpower the other person. Rather, the Craighead context is one where does the person, the defendant, does he think that he is cut off from outside contact? Is that person restrained physically in any way? Where there are two officers that are dressed in plain clothes that are not conducting a search warrant, that are not occupying various rooms in the house, where the officers are not cutting off the routes to escape in the context of Craighead, the government would posit that the number of officers is very relevant, militating toward no custody. Well, especially here, where they're not serving a warrant or something. They come to the front door in the daytime and ask if they can come in. And he lets them in and chooses the place where they'll talk. That's absolutely correct. That's more different from the stormtrooper's case that you referred to earlier. Yes, Your Honor. And it's that. So from the government's perspective, those facts don't cut against the government at all. That's correct. It's almost as if they didn't show up at all. He could have looked out and seen birds chirping on the fountain in the front yard, and it would have been the same. I wouldn't have left that fact out of the analysis. But in terms of the way the district court puts it, and the district court clearly finds that it's a factor in favor of custody, that's where the government suggests that there was an error. Kind of intimidating, don't you think, to have a couple of federal agents show up on your doorstep in the morning? Well, there will be coercive aspects to any contact with law enforcement, from a speeding ticket to this context. But in the context of Craighead, not the case. I guess my point is, you mentioned Craighead is not exclusive. Ropes is clear about that as well. But it's the feeling of it. Realistically, what's happening here, and I guess what I'm suggesting to you is that I'm not sure the government can carry the concept that having these two big guys show up in the morning is not a bit intimidating. Well, not to quibble, I don't know if there's anything on the record about these being big guys. Okay, let's say they're little guys. Let's say that there's some medium-sized guys that show up in the morning. We'll take that. Surely, there's going to be nervousness on the part of anyone who sees someone coming to the door in the morning. But it simply doesn't rise to the question. Did they have badges? Did they identify themselves? Is it bad? No, no, badges. Oh, yeah, there were badges, yes. They showed those and identified themselves, right? Absolutely. Again, there's the intimidation factor. Yes. Whatever their size. Whatever that means to this Court. Okay. Now, I see that my time is running out, but I'd like to also point out that it's in that same vein that compared to the facts in Craighead, the facts in this case simply don't rise to that level. There was no active isolation. Well, you make a great case. Craighead was an extreme case. But I'd like to ask you a question. Judge Shub had been a government prosecutor. He's been a federal judge for a very long time. I find it very puzzling the government should challenge, which is something that's a pretty close decision. He was a very experienced federal judge. Says, well, it tips this way. Why are you challenging it? Well, Your Honor, we disagree with regard to his conclusions, and despite our respect for Judge Shub, we think there's some logical errors in his analysis. Well, don't you agree it's very close? No, Your Honor. Compared to the facts in Craighead, compared to- Well, Craighead is an extreme case. That's correct. So, I mean, you take a wild case and say, well, it should be like that. It isn't like that. No, it's not like that. In that direction. But given the context of Craighead and the way that it puts the questions about isolation, about the number of police officers, it's the government's position that Judge Shub asked the questions and came to the conclusions in a logical way. And- Why don't you, we'll give you a minute to respond, and we won't ask you whether you think Judge Shub is big or medium-sized or small. I appreciate that. Okay. We'll hear from the defense. Your Honors, it's a rare instance in a criminal case in which the government suffers the disadvantage of the presumptions in favor of a judgment on appeal. I don't know over my 35 years how many times I've lost a case because this Court has said, Mr. Reardon, I'm sorry, the jury was the trier of fact, the judge was the trier of fact, we have to defer to their judgments. The only legal question here is, did the court apply the factors that this court has demanded it apply, the Craighead factors? The government concedes that Judge Shub went through every Craighead factor and discussed it at great length. So in terms of, did he apply the relevant principles of law? Absolutely. Under Hinkson, which I lost before this court, the next question is, are therefore his factual findings illogical, implausible, without support? It's ridiculous to suggest that these factual findings are without support. And actually, the reason the government loses, it highlighted right now. It stood before this Court and said, well, Judge Smith said maybe these guys were intimidating. And the government said, well, we don't know whether they were big, small, little, we don't know. You know who knows? Judge Shub. Well, now, Judge Shub made factual findings. Yes. And I've looked at him very carefully. And I can't say that any of the factual findings, there were two officers, their guns were in their holsters, that any of the factual findings are clearly erroneous. But we have the responsibility of looking at his conclusions, that is, what that meant de novo. So I don't think it's that easy for the process. For example, whether or not, or to what extent, those factual findings demonstrate that this person felt they were in custody and therefore deserved a Miranda warning. So I think that there's a step missing in your analysis. Well, Your Honor, what about tone? Tone is a fact. Judge Shub said the tone in which these officers addressed Mr. Blanford was threatening. That's a factual determination. He saw how these officers speak. This Court can't possibly say it wasn't a threatening tone. It doesn't know their size. It doesn't know what their voices sounded like. But he did. He said they threatened him in tone. The government says to you, and I quote, this is the reason they don't understand the case. At one page, they say that the calm manner described by the agents suggests that this was, you know, a nonthreatening situation. Mr. Blanford testified they were hostile and glaring. That evidence from Mr. Blanford controls the government. I gather there is no dispute about the fact that the agents threatened him with criminal charges unless he cooperated, right? Absolutely. What impact does that have under our case law, if any? Well, it's a Craighead factor. It's a threat. And what it means is that when Judge Shub says a reasonable person would not have felt that they could have walked away, which we all agree is the ultimate question, that those threats factor in. One of the things the threat factors are kind of interesting, in my view. I read this record very carefully, and I didn't see any rubber hoses that were going on there. They were talking to him. Obviously, they then knew information. And when they, during the process, they asked him questions and found out he was lying, they then moved in that direction. Well, is that really the kind of threat? And then when the defendant says, what can I do to save myself? Then they tell him what he can do to save himself. Mr. Blanford's description, which controls, is, they said to me, you're going down for all of it. Unless you cooperate, you're going down for all of it. The Judge Shub did agree that that fact happened. Yes. That made that statement. Yes, that's right. And therefore, he found that when you're threatened with that, that you're going down for all of it, a reasonable person in that situation facing these particular officers, who he saw and we didn't, talking in the way that they did, which he saw and was able to assess and this Court would not be able to assess, said that a reasonable person would not feel, would find, A, that they weren't free to walk away, and B, that this was, in this Court's decision in Craighead, a police-dominated atmosphere. Yeah, he made that comment. Now, is that a factual finding, or is that one of the factors that he took? I mean, it seems to me he's making a conclusion based upon facts. The police-dominated atmosphere. Yeah. And I don't even know what that means. The police were asking questions. That would be true any time we had one of these. You know, we'd never get to any other factors. Well, police-dominated atmosphere is the words of Craighead, right? I mean, so Judge Shub was certainly following this Court's directive when he posed the question as to whether this was a police-dominated atmosphere. I mean, this is a situation in which, under even the officer's version, Mr. Blanford said, can I get an attorney, or should I get an attorney? And they said, well, it'll slow down the process. I mean, they're obviously attempting to prevent that from occurring. They don't tell him that he doesn't have to speak. They don't tell him that he is free to leave. Nor do they have to, unless you're right that this was in custody. Right. How do you deal with the fact that when his wife comes home, that the police officers let him go and talk to his wife in private? Does that look towards, is that a factor that's towards the government or towards the defendant? Well, I think it's fair to say that that's favorable for the government. And the thing about Judge Shub's determination is he went through seven or eight factors. He addressed that one. He stated the reasons why, in the context of these officers and their tone, that would not indicate that this man felt free to leave. Your Honor, one very important factor is the government has an obligation in its brief to state every fact, every bit of evidence, and draw every inference in favor of the judgment below, under this Court's rules. Of the facts, not of the application. Right. And one of the things they leave out is that the FBI, in this case, lied to Mr. Blanford for a particular reason. They said, we'll set up a meeting at a mall. They called him and said, no, we don't have to interview you. And the reason that it did is it wanted to get into his house rather than do it at a mall. One factor you can say that in Judge Shub's analysis. But the evidence is clear. I know, but we're talking about Judge Shub's facts and whether he properly applied them. But we're also talking about drawing every inference in front of the judgment below. And under the rules of appellate procedure, a judgment below can be affirmed on any basis supported by the record. I don't see that. We're talking about Judge Shub coming to a conclusion. And if he went outside what he said was his record, then I don't see how that can change the conclusion he's drawing, which is what we're reviewing. But go ahead with your argument. Well, the point that I'm making is that whether there was a police-dominated atmosphere, which is one of the critical Craighead factors, would certainly be influenced by a determination or a belief or evidence that supports the fact that the police wanted to create a police-dominated atmosphere. And why did they not want the appointment at the mall? Because if you get into somebody's house, it's a lot harder for them to leave than it would be to walk away from a Chevy's where you've met with officers. I think any time police officers come into your house or to your office or to anything and ask you questions, it's police-dominated. I think that's a given. Your Honor, I'm simply quoting Craighead. This Court said in Craighead the ultimate inquiry is whether it's a police-dominated atmosphere. There's nothing left to it. But, you know, at the end of the day you mean police – it depends on what you mean, police-dominated. If there's somebody with a rubber hose is one thing. But if you're just talking to them, I look at it as dominated if they're asking the question. In fact, Your Honor, if you had two alternatives, one of them is I'm going to hit you over the head with a rubber hose three times, and the other is I'm going to send you to prison for decades, a threat that you're going to go down for it all is as powerful as a rubber trench. That's on the defendant's side, no question. And so – but we agree on this. The question is what was the emotional timber in that room? Would a reasonable person feel free to walk away? And, Your Honors, I submit to you that without doing what, as Judge Noonan said, this extremely experienced prosecutor – and I've failed on I don't know how many occasions to overturn a judgment by Judge Shubb in this Court – makes a finding based on looking at these officers that a reasonable person would not feel they could have walked away from that. How can an appellate court say we know more about that atmosphere than Judge Shubb? Because we have de novo review of the ultimate question. Right. But isn't the question of atmosphere so intensely fact-intensive that the notion of overturning a judgment based on a credibility determination, as this Court has said, is extraordinarily difficult? And this is not a case in which Judge Shubb was illogical, implausible, or lax in court direction. It's interesting that Judge Shubb said, other judges may well disagree with me. Exactly. Exactly. He wasn't saying that this is something everybody would agree with. So I assume he would say that not every court of appeals would agree either. Well, it's very different to talk about district court judges disagreeing. Who – it depends on the witnesses. It depends on the quality of the examination by the attorneys. This is a situation in which this Court – this Court doesn't know how big the guys in Greghead were. It doesn't know how big the guys in this case were. This is a case where the district court had a unique opportunity to assess all of those factors. Thank you, Your Honor. Thank you, Mr. Reardon. We'll give you a minute, okay? A couple of quick points, Your Honor. First, with regard to the statement that somehow the Blanford statements control, Judge Shubb specifically found that in every respect that the officers were more credible than Mr. Blanford. That's in the record. That was a specific finding. Where was that? I thought it was the officers. You know, I can get it for you in just a moment. Any time there's a disagreement, he believed the officers, not the defendant. That's correct. So with regard to this question of whether it was calm and it was angry or whether the conversation was angry, and if the officers testified that it was a calm conversation, Judge Shubb found that to be a more credible statement on behalf of the officers. So is this one of those factors, facts, where there has to be a clear error, or is this something that we review de novo? That's a clear error fact. With regard to this ruse about whether he was to be, that's simply not in the record. That's all I want to point out there. And then finally, with regard to the overarching point about whether or not we can accept Judge Shubb's timber and feeling about the situation, it is the government's sole point, not our sole point, it's our chief point, to point out the logical inconsistencies in how he gets to his final legal conclusion, which is whether or not there was custody. And it is those legal inconsistencies that we point out in our brief and to cap it off the idea of the comfort standard that Mr. Blanford wouldn't have felt comfortable eating a sandwich or watching TV in terms of determining whether or not there was custody that the government takes issue with and therefore challenges Judge Shubb's legal conclusion in this case. Thanks to you both for your argument. Case of United States v. Blanford is submitted.
judges: Wallace, Noonan, Smith